**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HECTOR VALDEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 1:16-cv-00695-LY-AWA** |
| | § | |
| **BUREAU OF PRISONS, et al.,** | § | |
| **Defendants.** | § | |

**INDIVIDUAL DEFENDANTS PERSIMMON, HARVEY, OUTWIN, MONTGOMERY**
**AND RUSSELL'S MOTION TO DISMISS OR IN THE ALTERNATIVE,**
**MOTION FOR SUMMARY JUDGMENT**

Comes now Defendants Hosun Persimmon, Mark Harvey, Laurel Outwin, Gary Montgomery and Kenneth Russell, M.D., by and through the Assistant United States Attorney for the Western District of Texas, and hereby submit the following Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

## I.   INTRODUCTION

Hector Valdez (hereinafter "Plaintiff"), register number 19799-078, is an inmate formerly incarcerated at the Federal Correctional Institution in Bastrop, Texas ("FCI Bastrop"). *See* Inmate Data for Hector Valdez, attached hereto as Exhibit A.  He is serving a 70-month sentence with two years of supervised release time for Conspiracy With Intent To Distribute Cocaine. *Id.*   He is currently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"). His current projected good conduct time release date is October 8, 2018. *Id.*

Plaintiff named multiple defendants in this lawsuit. A Motion to Dismiss regarding Defendants Bureau of Prisons ("BOP") and Health Care Service has been previously filed.  *See* Clerk's Doc. #32.   Plaintiff also named several defendants in their individual capacities, including

these current or former FCI Bastrop medical staff members:   Ms. Persimmon, Mr. Harvey, Ms. Outwin, Mr. Montgomery and Dr. Russell.[1]   The present motion relates only to these individual Defendants.[2]   While not specified in his complaint, Plaintiff presumably filed this action under the doctrine set forth in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See* COMPLAINT and MORE DEFINITE STATEMENT (Clerk's Docs. #1 and 12).

In his Complaint, Plaintiff alleges his Eighth Amendment rights to be free from cruel and unusual punishment were violated by these Defendants at FCI Bastrop. *Id.*   Specifically, Plaintiff claims during the time period of October 2013 through March or April 2014, he suffered a permanent injury to his left foot at FCI Bastrop due to the negligence and malpractice and deliberate indifference of institution doctors and nurses and other employees. *Id.*   He alleges he had a cut on the left foot and was seen in the clinic and he believed he had a broken bone in the foot. *Id.*   However, Plaintiff claims the foot was bandaged and he was sent away.   He states he was seen repeatedly in the clinic and eventually given antibiotics, although the infection persisted. *Id.*   Plaintiff states he was examined months later and a physician discovered a broken bone in the foot and he removed bone fragments. *Id.*   X-rays were ordered and he was taken to the emergency room where he was prescribed antibiotics. *Id.*   Plaintiff alleges he was denied proper medical care and experienced delays in care by the Defendants which could have prevented the loss of bone and permanent injury to his left foot. *Id.* As relief, Plaintiff seeks an unspecified amount of monetary

---

[1] In the time period relevant to Plaintiff's claims, the Individual Defendants held the following positions at FCI-Bastrop:   Ms. Persimmon was an infectious disease coordinator; Mr. Harvey was a nurse; Ms. Outwin was a nurse; Mr. Montgomery was a physician assistant; and Dr. Russell was a physician.   Of these Defendants, only Mr. Harvey currently remains at FCI-Bastrop.

[2] As of the date of this filing, Individual Defendants Donna March and Maranda McCrary-Dixon have not been served.

damages against each Defendant for Plaintiff's injuries. *Id.*

In response, Defendants Persimmon and Montgomery argue they should be dismissed because they have absolute statutorily immunity from suits against her individually under 42 U.S.C. § 233(a), since they were both commissioned U.S. Public Health Service Officers ("PHS") whose actions with regard to Plaintiff's medical care were within the scope of their duties as a PHS Officer.

Alternatively, the Defendants Persimmon and Montgomery, and remaining Individual Defendants Russell, Outwin and Harvey argue they should be granted summary judgment for all of Plaintiff's constitutional claims.   The Defendants show Plaintiff was a non-compliant diabetic who often missed his insulin doses at pill line, and he consumed a diet of high sugar candies and other snacks he purchased at the commissary.   Contrary to his beliefs, Plaintiff did not suffer a "cut" and "broken bones" in his left foot which became a permanent injury.   Plaintiff in fact did not control his diabetes and as a result he developed diabetic ulcers on his left foot which did not easily heal, and he experienced diabetes-related bone loss in the foot from osteomyelitis.   These conditions were appropriately treated at FCI Bastrop and Plaintiff was transferred to a medical referral center.

Finally, the Defendants argue they are entitled to the defense of qualified immunity.   The Defendants were not aware of any clearly established laws which constitutionally prohibited their actions in relation to the issues in this case, nor does Plaintiff properly plead facts showing a violation of a constitutional right clearly established at the time of the alleged conduct.

## II.   BACKGROUND FACTS

Plaintiff was an inmate at the satellite camp at FCI Bastrop from October 9, 2013, until April 17, 2014, when he transferred to the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). *See* Exhibit B, DECLARATION OF KENNETH RUSSELL WITH ATTACHMENTS, M.D., at ¶2.   When he was seen in the clinic at FCI Bastrop in October 2013, he already had an ulcer on his foot. *Id.*   Plaintiff was seen by a Mid-level Practitioner on October 30, 2013, with a 2cm X 2cm ulceration on two areas of the left foot that were deep and communicated with each other. *Id.* From the description, these were chronic in nature, and secondary to his diabetes, and the result of poor control of his ulceration and diabetes prior to being admitted to FCI Bastrop. *Id.*

His Hgb A1c blood test results from November 7, 2013, was 11.4, which shows poor control prior to his arrival at FCI Bastrop. *Id., ¶3.*   Labs on this date also show chronic renal disease, anemia, low albumin, which with the abnormal HgbA1c are indicative of non-compliance and poor control of his disease process for several months. *Id.* His kidney disease is probably secondary to diabetic glomerulosclerosis, which again points towards poor control of the diabetic disease process, prior to coming to FCI Bastrop. *Id.*

He came to sick call on October 28, 2013, and was seen by the nurse. *Id., ¶4.*   Within 48 hours (10/30/2013) Plaintiff was seen by the provider, evaluated, placed on antibiotics, labs ordered, and placed on dressing changes. *Id.*   Plaintiff was seen again by the provider on November 7, 2013, and improvement was found in both ulcers. *Id.*   A consultation request was placed to a podiatry specialist. *Id.*   This was placed on November 7, 2013, and approved on November 12, 2013. *Id.*   Plaintiff was seen by a contract podiatrist on March 24, 2014, and the podiatrist found exposed bone and he removed fragments and cleaned, debrided, and cultured the

ulcer. *Id.*   When Plaintiff returned to FCI Bastrop, his foot was x-rayed and bone was found to be missing from his small left toe. *Id.*   He was sent to the emergency room for further work-up for osteomyelitis, and he returned to FCI Bastrop the same day. *Id.*

Plaintiff's medical records show from October 6, 2013, to April 17, 2014, Plaintiff had 169 no shows to the pharmacy pill line. *Id., ¶5.*   Most of these were for insulin, which indicates severe non-compliance. *Id.*   A copy of his commissary report from October 24, 2013, until April 9, 2014, again shows significant and severe non-compliance with his dietary intake. *Id.*   Finger stick blood glucose tests, comparing his entering glucoses from October, 2013, were significantly improved during his latter time at FCI Bastrop. *Id.*   This is even more significant considering his severe non-compliance. *Id.*

Plaintiff's records show he was seen promptly after his initial sick call evaluation, and labs, wound care, and consultations were placed. *Id.*, ¶6.   Plaintiff was a patient who was non-compliant with his medical plan of care, nor was he compliant with his dietary consumption of items that would cause his diabetes to worsen. *Id.*   As a result, he developed chronic ulcers and bone loss in the left foot. *Id.*   His chronic left foot condition was properly managed through regular evaluations in the clinic and an evaluation and treatment by a podiatrist, and when the wounds were noted to involve the bone and in general not improving, he was transferred to FMC Lexington on April 17, 2014. *Id.*

A review of Plaintiff's Administrative Remedy history shows he has administratively exhausted his remedies. *See* Exhibit C, DECLARATION OF JOSEPH TANG.   Plaintiff filed this above-styled action on Jun 13, 2016. *See* COMPLAINT (Clerk's Doc. #1).

## III.   ARGUMENT & AUTHORITIES

**A.    DEFENDANTS PERSIMMON AND MONTGOMERY ARE STATUTORILY IMMUNE FROM INDIVIDUAL LIABILITY BECAUSE THEY ARE COMMISSIONED U.S. PUBLIC HEALTH SERVICE OFFICERS.**

Plaintiff names as Defendants Hosun Persimmon and Gary Montgomery. Both were commissioned USPHS officers at the time of the events at FCI Bastrop giving rise to this action. *See* Exhibit D, DECLARATION OF HOSUN PERSIMMON and Exhibit E, DECLARATION OF GARY MONTGOMERY. USPHS officers are generally assigned to a duty station within an existing federal agency or program. *Id.* Both Defendant Persimmon and Montgomery's assigned duty station at all times relevant to this litigation was FCI Bastrop. *Id.* USPHS employees are shielded from personal liability for acts taken in the course of the performance of their duties by 42 U.S.C. Section 233, which is part of the Public Health Services Act. That section provides, in pertinent part:

> The remedy against the United States provided by [the Federal Tort Claims Act, 28 U.S.C. Sections 1346(b) and 2672] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a). Thus, USPHS employees enjoy an absolute statutory immunity from such claims.

This statutory grant of immunity was affirmed by the Supreme Court in *Hui v. Castaneda*, 559 U.S. 799 (2010). In *Hui*, the Supreme Court unanimously determined that the language set forth in Section 233(a) precluded a *Bivens* action against defendant USPHS employees for harms

arising out of the performance of medical or related functions within the scope of their employment. *Id.* at 801.    "PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of" their conduct when acting within the scope of their office or employment. *Id.*

Based on the status of Defendants Persimmon and Montgomery as USPHS employees and commissioned USPHS officers at all times relevant to this litigation and the statutory immunity conferred upon them by Congress, all claims against these Defendants Persimmon and Montgomery should be dismissed based upon their statutory immunity from suit under 42 U.S.C. § 233(a).

**B.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

**1.   Plaintiff's claims under the Eighth Amendment.**

Plaintiff alleges deliberate indifference to his left foot condition at FCI Bastrop which allegedly resulted in a "permanent injury," in violation of his Eighth Amendment rights. *See* COMPLAINT (Clerk's Doc. #1).    While Plaintiff was ordered to provide a more definite statement regarding the basis of his claims, the statement he provided and the care he claims he received does not match the actual medical records in this case.    *See* MORE DEFINITE STATEMENT (Clerk's Doc. #12); *see also* Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS.    Moreover, Individual Defendants Persimmon and Russell, never even saw Plaintiff for his foot.[3]    *See* Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS; *see also* Exhibit D, PERSIMMON DECLARATION.

---

[3] Persimmon and Russell appear in Plaintiff's medical records as having provided medication to Plaintiff in the pill line, but did not render care related to his left foot.   *See* Medical Records included with Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS.

His claims appear to be of a more general nature, and he appears to mistakenly believe he had a

broken bone and infection of the left foot which the Defendants failed to promptly treat, resulting

in the "permanent injury." *See* COMPLAINT and MORE DEFINITE STATEMENT (Clerk's Docs. #1 and

12). However, in reality, his chronic left foot condition and ulceration was caused by his medical

non-compliance.

### 2.  Summary Judgment standard under the Eighth Amendment.

In the alternative, because the provided declarations and supporting documents establish

that the Defendants are entitled to judgment as a matter of law, they should be granted summary

judgment in their favor.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure:

> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law.

Under this rule, the Supreme Court has rejected a standard which requires moving parties to

support their motions for summary judgment with an affirmative evidentiary showing that negates

the essential elements of a plaintiff's case. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Instead,

the Court has stated "[t]he burden on the moving party may be discharged by 'showing' – that is,

pointing out to the district court – that there is an absence of evidence to support the nonmoving

party's case." *Id*. at 325. Once the moving party has made this showing, the burden passes to the

nonmoving party to go beyond the pleadings and to designate specific facts that show there is a

genuine issue for trial. *Id*. at 324. To create a genuine issue of material fact, the nonmovant must

do more than present some evidence on a disputed issue. *See Anderson v. Liberty Lobby, Inc.,* 477

U.S. 242, 249-52 (1986). Should it appear that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law, the district court should grant summary

judgment. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

Prisoners do have a constitutional right to receive adequate medical care while in custody.

*Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble,* 429 U.S. 97 (1976).   However, in

order to properly state a claim of cruel and unusual punishment, under the Eighth Amendment, a

prisoner must demonstrate that prison officials were "deliberately indifferent to [their] serious

illness or injury." *Estelle*, 429 U.S. at 105.   This means that "[t]he Eighth Amendment does not

apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only

that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with

a culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 20 (1992).   Thus, a proper Eighth

Amendment claim contains both an objective and subjective component. *Wilson v. Seiter*, 501 U.S.

294, 303 (1991).

And, to satisfy the objective component, a prisoner must show the existence of a medical

need that is "sufficiently serious." *Farmer*, 511 U.S. at 825.   To satisfy the subjective component,

a prisoner must show the official "[knew] of and disregard[ed] an *excessive* risk to inmate health

or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." (Emphasis added).

*Id.*   Otherwise, there is no violation of the Eighth Amendment. *Id.*   Moreover, the requirement

that the official has subjectively perceived a risk of harm, and then disregarded it, is meant to

prevent the constitutionalization of medical malpractice claims, as a plaintiff alleging deliberate

indifference must show more than negligence or the misdiagnosis of an ailment. S*ee Estelle*, 429

U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Based on this test, prisoners face a high threshold in attempting to establish such a claim. Indeed, the concept of deliberate indifference is the functional equivalent of criminal recklessness, essentially a wanton disregard for a serious medical need. *Farmer*, 511 U.S. at 839-840; *See Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006).   The conduct must be "highly unreasonable conduct or a gross departure from ordinary care in a situation in which a high degree of danger is readily apparent." *Greer v. Daley*, File No. 01-C-586, 2001 WL 34377922, *2 (W.D. Wis. Dec. 27, 2001); *cf. Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("it is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the [Eighth Amendment].").   A prison inmate can demonstrate an Eighth Amendment violation by showing that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show a wanton disregard for any serious medical needs. *See Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Furthermore, it is well settled that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." S*ee Estelle*, 429 U.S. at 107.   Therefore, when a prisoner has received medical attention and challenges only matters of medical judgment or merely expresses a difference of opinion concerning an appropriate treatment, he fails to state a constitutional claim or create a genuine issue of material fact for summary judgment purposes. *Id.; See Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006)(a prisoner's mere disagreement with his medical treatment does not constitute

deliberate indifference); *Stewart v. Murphy,* 174 F.3d 530, 535 (5th Cir. 1999), *cert. denied,* 528

U.S. 906 (1999)(difference in medical opinions does not an issue of genuine material fact for

deliberate indifference under the Eighth Amendment).

### 3.   The Defendants are entitled to summary judgment.

An examination of the facts in this case indicates that each of the Individual Defendants is

entitled to summary judgment as a matter of law for all of the claims against them under the Eighth

Amendment, pursuant to Rule 56.   As discussed, none of the Defendants knew of but consciously

ignored Plaintiff's medical conditions.   To the contrary, the Defendants who were familiar with

Plaintiff's medical condition and treatment were aware he was provided with appropriate medical

care for his left foot ulcer and bone loss. *See* Exhibit B, RUSSELL DECLARATION WITH

ATTACHMENTS at ¶¶2-6.

As discussed above in the Facts Section, Plaintiff arrived at FCI Bastrop with poorly

controlled diabetes, and he missed many dosages of insulin and other medications at pill line

because he did not show up for the medication. *Id.*   He also purchased many high sugar candies

and other snacks which were counter to goals of stabilizing his diabetes. *Id.*   When he arrived at

FCI Bastrop, he was already determined to be a diabetic with poor control of his condition and the

ulcers or lesions were already present on his left foot. *Id.*   His blood test results, the nature of the

ulcers and bone loss were indicative of a chronic case of poorly controlled diabetes, and there is

no evidence any Defendant at FCI Bastrop caused or worsened this condition which pre-dated his

arrival at FCI Bastrop. *Id.*

Plaintiff's medical records show no entries by Defendants Dr. Russell or Infectious Disease

Coordinator Persimmon. *See* Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS; SEE *also*

Exhibit D, PERSIMMON DECLARATION.   The record does show medical staff at FCI Bastrop who did see Plaintiff properly treated his left foot ulcers and diabetic condition, despite Plaintiff's non-compliance with taking his insulin and consuming a proper diet. *See* Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS at ¶¶2-6.   His foot wounds were properly managed with regular evaluations, cleanings, dressing changes, and antibiotics, and a consultation with a podiatrist who treated Plaintiff's bone loss. *Id.* Plaintiff's overall diabetes condition did actually improve while he at FCI Bastrop. *Id.*   However, when his foot condition was determined to not be improving, he was transferred to a medical referral center for a higher level of care. *Id.*

In summation, the record does not support Plaintiff's claims that the Defendants knew of but consciously chose to ignore his serious medical condition.   Contrary to Plaintiff's beliefs that he incurred a "cut" and "broken bone" resulting in a "permanent injury" to his left foot due to inadequate medical care, Plaintiff in fact had these chronic conditions because of his non-compliant, poorly controlled diabetes. *Id.* The ulcers and bone loss were properly managed at FCI Bastrop and he was transferred to a medical center. *Id.*   Accordingly, the Defendants are entitled to summary judgment pursuant to Fed.R.Civ.P. 56.

**C.     THE DEFENDANTS ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY.**

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that federal officials are entitled to qualified immunity from suit for violations of constitutional rights insofar as their conduct does not violate clearly established law.   As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that . . . such conduct violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511 (1985).   The standard for qualified immunity

was set forth by the Court in *Harlow*:

> [G]overnment official[s] performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.   When the defense of qualified immunity is raised, the plaintiff has the burden of establishing that the law was clearly established. *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court refined the test for the applicability of qualified immunity:

> [W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action . . . ,assessed in light of the legal rules that were "clearly established" at the time it was taken.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court issued a new standard a plaintiff must meet to show a government official is not entitled to qualified immunity from suit: 1) that the facts as alleged by him show a violation of a constitutional right; and 2) that such violated right was clearly established.

However, in 2009, the two-step qualified immunity analysis in *Saucier* was overturned in part by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223 (2009), returning to a qualified immunity standard closer to the original standard set forth in *Harlow*.  The Supreme Court in *Pearson* simplified the qualified immunity analysis, giving district courts discretion to directly proceed to the question of whether the law was clearly established at the time of the alleged conduct such that a government official would be on notice that the conduct was unconstitutional. *Id.*   Under *Pearson*, district courts have discretion to bypass the question of whether the facts show a constitutional violation by the defendants. *Id.*

The Supreme Court has therefore returned to a standard consistent with the intent of qualified immunity, which gives government officials room to make reasonable but mistaken judgments about open legal questions, and when properly applied qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. Al-Kidd,* 563 U.S. 731 (2011); *See also Jimenez v. Wood County, Texas,* 621 F.3d 372, 378 (5ᵗʰ Cir. 2010), *rehearing en banc,* 660 F.3d 841 (5ᵗʰ Cir. 2011)(a plaintiff must show not only a violation of a constitutional right, but also that the defendants' actions were objectively unreasonable in light of clearly established law at the time of the complained of actions).

To show that qualified immunity does not apply, as is the plaintiff's burden, *see Jones v. Lowndes County, Miss.*, 678 F.3d 344, 351 (5th Cir. 2012),   a plaintiff must "plead[] *facts*" that would show a clear violation, *al-Kidd*, 563 U.S. at 739 (emphasis added). "To survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal quotation marks omitted, emphasis added). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557) (internal citations omitted, alterations in *Iqbal*).

In addition, to overcome qualified immunity, the facts a plaintiff alleges must show that "the official," not some subordinate employee, or the agency in general, "violated a statutory or constitutional right." *al-Kidd*, 563 U.S. at 737. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. When individual-capacity claims are at stake, "each Government official, his or

her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. To pursue a *Bivens* claim, therefore, "a plaintiff must plead that each Government-official defendant, through the official's *own individual* actions, has violated the Constitution." *Id*. at 676.

As explained above, qualified immunity bars suit against a federal official unless a plaintiff pleads facts showing that the official violated a clearly established constitutional or statutory right. *See al-Kidd*, 563 U.S. at 738. A plaintiff must therefore allege facts that show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs cannot "ascribe the acts of all Individual Defendants to each individual defendant." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011). Rather, "'damages claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" *Id.* (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)); *accord Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (allegations that "refer[red] to all defendants generally and categorically" were insufficient); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) ("[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.").

In this case *sub judice*, Plaintiff has alleged no facts against any of the Defendants that would show a violation of any clearly established constitutional right.   As discussed above, under the Eighth Amendment, Plaintiff must allege facts indicating the Defendants each knew he had a sufficiently serious medical condition but consciously chose to ignore this condition.   Plaintiff

pleads no such facts in his Complaint, and even admits he received treatment in the form of repeated sick call appointments, bandages, antibiotics, and a referral to a podiatrist who treated his bone loss, though he believes there was a delay in treatment which could have prevented his bone loss and "permanent injury." *See* COMPLAINT and MORE DEFINITE STATEMENT (Clerk's Docs. #1 and 12).   Plaintiff also fails to allege facts showing each individual Defendant engaged in conduct which met the Eighth Amendment standard. *Id.*

Plaintiff has failed to meet his burden of establishing facts showing a violation of a constitutional right that was clearly established at the time of the conduct alleged by the Plaintiff. *Complaint.*   There was no clearly established law which placed the Defendants on notice that their conduct in the medical care or administration of medical care for Plaintiff was unconstitutional. And as described in detail above, the evidence presented clearly indicates the Defendants did not violate any clearly established statutory or constitutional rights of Plaintiff.   *See* Exhibit B, RUSSELL DECLARATION WITH ATTACHMENTS at ¶¶2-6.   The *Bivens* claims against the Defendants should therefore be dismissed because they are entitled to and shielded by qualified immunity.

## IV.   CONCLUSION

Based on the above stated facts and authorities, the claims against Defendants Hosun Persimmon, Mark Harvey, Laurel Outwin, Gary Montgomery and Kenneth Russell, M.D should be dismissed in their entirety.   In the alternative, summary judgment should be granted in favor of all of these Defendants, because no genuine issues of material fact exist, pursuant to Fed.R.Civ.P. 56.   Defendant prays for the above relief and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

RICHARD L. DURBIN, JR.
UNITED STATES ATTORNEY

By:     */s/ Mark Guerrero*
            MARK GUERRERO
            Assistant United States Attorney
            Texas Bar No. 24032377
            816 Congress Avenue, Suite 1000
            Austin, Texas 78701
            (512) 916-5858 (phone)
            (512) 916-5854 (fax)
            Mark.Guerrero@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.  I further certify that I mailed the foregoing document by Certified Mail, Return Receipt Requested to the following non-CM/ECF participant:

Hector A. Valdez
Register No. 19799-078
Federal Medical Center, Lexington
P.O. Box 14500
Lexington, Kentucky 40512

            */s/ Mark Guerrero*
            Mark Guerrero
            Assistant United States Attorney