IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **HECTOR A. VALDEZ #19799-078** | § | |
| | § | |
| **V.** | § | A-16-CV-695-LY |
| | § | |
| **BUREAU OF PRISONS,** | § | |
| **et al.** | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

Before the Court are Plaintiff's Complaint (Document 1); Plaintiff's more definite statement (Document 12); the Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed by the Bureau of Prisons and the defendant identified as "Health Services" (Document 32); Plaintiff's response thereto (Document 40); the Motion to Dismiss or in the Alternative Motion for Summary Judgment filed by Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell (Document 52); Plaintiff's response thereto (Document 53); the First Amended Motion to Dismiss or in the Alternative Motion for Summary Judgment filed by Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell (Document 55); the Motion for Summary Judgment and in the Alternative

1

Motion to Dismiss filed by Defendant Gee (Document 56); Plaintiff's response thereto (Document 57); and Plaintiff's Motion to Amend Complaint (Document 58). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

STATEMENT OF THE CASE

At the time he filed his complaint pursuant to Bivens v. Six Unknown Agents of the Bureau of Narcotics and Dangerous Drugs, 403 U.S. 388 (1971), Plaintiff was confined in FMC Lexington. He complains of inadequate medical care received while previously confined in FCI Bastrop.

According to Plaintiff, he suffered an injury to his left foot. Plaintiff asserts, after injuring his foot, he complained to nurses at FCI Bastrop that his foot was broken. Plaintiff alleges he was given bandages and sent away. Plaintiff allegedly signed up repeatedly for medical care and was eventually given antibiotics. Plaintiff claims a doctor finally examined him, after months of suffering. The doctor allegedly removed bone fragments from his foot and discarded them into a waste basket. Plaintiff indicates x-rays were ordered and he was taken to an emergency room at a hospital in Austin, Texas. The emergency room doctor allegedly prescribed antibiotics, and Plaintiff was returned to the prison. Plaintiff contends, if prison staff would have acted promptly and appropriately, he would not have suffered a permanent injury and suffered in pain. Plaintiff claims the defendants were deliberately indifferent to his health and failed to provide adequate medical care. Plaintiff also claims the defendants were negligent.

Plaintiff sues the Bureau of Prisons ("BOP"), Donna March, Laurel Outwin, M. Harvey, G. Montgomery, H. Persimmon, Kenneth Russell, G. Paul (later identified as DPM Paul M. Gee), James Humphrey (subsequently dismissed by Plaintiff), Health Care Services, and Dixon M. McCray (later identified as Maranda McCrary-Dixon).

After consideration of Plaintiff's complaint, the Court ordered Plaintiff to file a more definite statement, specifying what each defendant did to violate his constitutional rights. Plaintiff responds he complained to Donna March on November 15, 2013, about his injury. March allegedly examined Plaintiff's foot and gave him a band-aid. Plaintiff asserts March was aware he was a diabetic and ignored the seriousness of his injury. Plaintiff contends her cursory exam of his foot was malpractice and she was deliberately indifferent to his serious medical needs.

Plaintiff similarly alleges H. Persimmon failed to examine Plaintiff, gave him a bandage, and told Plaintiff to do his own wound care. He contends her actions were negligent and malpractice.

Plaintiff further alleges McCrary saw Plaintiff in January 2014 and disregarded the seriousness of his injury. According to Plaintiff, McCrary failed to provide Plaintiff the care he needed or make a recommendation for proper treatment. Specifically, Plaintiff alleges McCrary denied Plaintiff's request for x-rays.

With respect to Defendant Laurel Outwin, Plaintiff alleges Outwin examined Plaintiff's foot in February 2014 and concluded it was infected. Two weeks later Plaintiff allegedly returned to report he injured his foot again in the same place as his original blister and that he may have broken his littlest toe. Plaintiff complains she did not examine the toe or order x-rays and simply advised he should continue with the same treatment of wrapping his foot. Plaintiff contends her negligence and deliberate indifference led to the rotting of his foot and eventual loss of bone.

Similarly, Plaintiff alleges Nurse Harvey treated Plaintiff's infected foot and made no effort to get Plaintiff further treatment despite Plaintiff's pain level. However, Plaintiff admits he was sent to Dr. Gee, an outside doctor, for treatment of his foot. He complains Nurse Harvey failed to make a notation of the treatment Dr. Gee provided, specifically that Dr. Gee removed bone from Plaintiff's

3

foot and threw the fragments in the trash. Plaintiff contends Nurse Harvey's negligence caused the bone loss in Plaintiff's foot.

With respect to G. Montgomery, Plaintiff alleges she failed to make any recommendation regarding his treatment even though she was aware of Plaintiff's infection and his foot had a foul odor. Plaintiff repeats he was sent to Dr. Gee on February 24, 2014. The following day Plaintiff's foot was x-rayed and he was prescribed pain medication by Dr. Gee. According to Plaintiff, the x-rays revealed he was missing bone in his foot. Two to three hours after the x-rays were read Plaintiff allegedly was transported to an emergency room at a hospital in Austin. Plaintiff alleges he was told he would be kept in the hospital for 30 days for IV antibiotics. However, Plaintiff asserts he was returned to prison and put on bed rest. He admits he was given antibiotics and pain medication but alleges the antibiotics were not the kind he needed.

Plaintiff alleges K. Russell knew or should have known through medical records that Plaintiff's foot was broken, swollen, and infected and that Plaintiff was in pain. Plaintiff further alleges Russell should have know Dr. Gee treated Plaintiff and removed bone fragments from his foot. Plaintiff contends Russell was negligent and deliberately indifferent.

Plaintiff makes similar allegations with respect to James Humphrey. However, Plaintiff subsequently dismissed Humphrey as a defendant.

With respect to Dr. Gee Plaintiff complains Dr. Gee failed to request x-rays, threw Plaintiff's bone fragments in the trash, and failed to conduct any type of testing. Further, Plaintiff alleges the procedure Dr. Gee used was not "protocol." Dr. Gee allegedly told Plaintiff he would see him again in two weeks but did not.

4

After consideration of Plaintiff's original complaint and more definite statement, the Court ordered service on the individually named defendants. Service was eventually returned executed for all of the individually named defendants with the exception of Defendants March and McCrary-Dixon, who no longer work at FCI Bastrop. Counsel for the Government provided the Court with the last known addresses for March and McCrary-Dixon, and service was reissued. For both Defendants March and McCrary-Dixon service was returned unexecuted once again. Plaintiff has not provided the Court with any additional information needed to serve these two defendants. Accordingly, Plaintiff's claims against Defendants March and McCrary-Dixon should be dismissed without prejudice for want of prosecution. Plaintiff failed to provide the Court with sufficient information to effectuate service.

The Court did not order service upon the Bureau of Prisons or Health Services, because Plaintiff's claims against these defendants are barred by sovereign immunity. Nevertheless, these defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment, which they later amended. During the time period in question, Defendants indicate they held the following positions: (1) Persimmon - infectious disease coordinator; (2) Harvey - nurse; (3) Outwin - nurse; (4) Montgomery - physician's assistant; and (5) Russell - physician. Defendants Persimmon and Montgomery argue they should be dismissed because they have absolute statutory immunity from suits against them individually under 42 U.S.C. § 233(a), because they were both commissioned U.S. Public Health Service ("PHS") Officers whose actions with regard to Plaintiff's medical care were within the scope of their duties as PHS Officers.

Defendants also move for summary judgment, arguing Plaintiff was a non-compliant diabetic who often missed his insulin doses at pill line, and he continued a diet high of sugar candies and other snacks he purchased at the commissary. Defendants argue, contrary to Plaintiff's assertion, he did not suffer a "cut" and "broken bones" in his left foot which became a permanent injury. Instead, Defendants explain Plaintiff did not control his diabetes and as a result he developed diabetic ulcers on his left foot which did not easily heal, and he experienced diabetes-related bone loss in the foot from osteomyelitis. Defendants contend his condition was appropriately treated at FCI Bastrop and Plaintiff was transferred to a medical referral center. Defendants further argue they are entitled to qualified immunity

Dr. Gee filed a Motion for Summary Judgment and in the alternative Motion to Dismiss. He explains he is a licensed podiatrist practicing in the State of Texas. According to Dr. Gee, Plaintiff was referred to him through FCI Bastrop for an ulcer that developed on Plaintiff's left foot. Dr. Gee argues Plaintiff's <u>Bivens</u> claims against him should be dismissed, because he is not a federal officer. Rather, he explains he is a private citizen who has contracted with the federal government to provide podiatry services to federal inmates. Dr. Gee further argues, even if he were a federal officer, Plaintiff has not shown Dr. Gee was deliberately indifferent to Plaintiff's alleged serious illness or injury. To the extent Plaintiff attempts to allege a claim for medical negligence, Dr. Gee argues the claim is barred by the statute of limitations and Plaintiff has no evidence of negligence by Dr. Gee.

In response Plaintiff repeats many of his same allegations. However, he refutes the FCI Bastrop Defendants' assertion that he missed insulin doses. Plaintiff asserts he was never prescribed insulin. He does admit, however, he was prescribed Metformin daily for his diabetes and argues he is compliant with his diabetic care. Plaintiff also denies his injury was only an ulcer. Plaintiff

6

asserts he suffered a cut after he developed the ulcer. After he cut his foot, Plaintiff indicates his foot was wrapped instead of bandaged at sick call. Further, Plaintiff asserts, when in line for pills and wound care, the staff made offenders pick one or the other. Plaintiff requests the Court to deny the defendants' motions.

Plaintiff recently filed a motion to amend his complaint to add Miss Heratige as a defendant. According to Plaintiff, he told Heratige his foot was injured and he could not climb the ladder on the beds to get to the third bunk and requested a bottom bunk assignment. Heratige allegedly refused to reassign Plaintiff to a bottom bunk. According to Plaintiff, she eventually reassigned him to the middle bunk. Plaintiff alleges she finally agreed to reassign him so long as he kept quiet about the issue when the regional office came to visit the institution. Plaintiff maintains Heratige told him to be outside when the regional office did their walk through. Plaintiff asserts he had another inmate assist him to get outside to recreation that day. Plaintiff contends Heratige's treatment was cruel and unusual and deliberately indifferent to his serious medical needs. In addition, Plaintiff asserts she discriminated against him due to his race.

## DISCUSSION AND ANALYSIS

A.  Motion to Amend Complaint

Amending Plaintiff's complaint would be futile, because Plaintiff's claims against Defendant Heratige are time-barred. Plaintiff's proposed amended complaint does not relate back to his original complaint.

Because there is no federal statute of limitations for Bivens claims, federal courts apply the general personal injury limitations period and tolling provisions of the forum state. Brown v. Nationsbank Corp., 188 F.3d 579, 590 (5th Cir. 1999); Gartrell v. Gaylor, 981 F.2d 254, 256 (5th

7

Cir. 1993); see also, Izen v. Catalina, 398 F.3d 363, 367 n. 3 (5th Cir. 2005). In Texas, the relevant statute of limitations is two years. See Cooper v. Brookshire, 70 F.3d 377, 380 n. 20 (5th Cir. 1995); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986).

Plaintiff was transferred to FMC Lexington on April 17, 2014. Therefore, any claim against Defendant Heratige accrued before that date. Plaintiff's motion to amend was mailed to the Court on April 12, 2017, nearly three years after his transfer to FMC Lexington and after the expiration of the limitations period.

Plaintiff's proposed amended complaint does not relate back to his original complaint. Federal Rule of Civil Procedure 15(c)(1) states that "[a]n amendment to a pleading relates back to the date of the original pleading" in a few specific circumstances. First, under Rule 15(c)(1)(A), an amendment relates back when "the law that provides the applicable statute of limitations allows relation back." Section 16.003(a) of the Texas Civil Practice and Remedies Code, which establishes the two-year limitations period for personal injury suits, is silent on the issue of tolling and relation back. The Fifth Circuit recently concluded the Texas law providing the applicable limitations period does not allow relation back within the meaning of Rule 15(c)(1)(A). Balle v. Nueces Cnty., Tex., No. 16-40789, 2017 WL 2590512 (5th Cir. 2017).

In addition, Rule 15(c)(1)(C) provides that an amendment relates back to the original complaint when, in addition to meeting certain other requirements, "the amendment changes the party or the naming of the party against whom a claim is asserted" and "the party to be brought in by amendment ... knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." This rule "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result

8

of an error, such as a misnomer or misidentification." Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 469 (2d Cir. 1995)).

In this case, Plaintiff did not mistakenly identify Heratige or identify her as a Jane Doe. Plaintiff also did not raise a claim in his original complaint regarding his bunk assignment or race discrimination. Accordingly, Plaintiff's proposed amended complaint does not relate back to his original complaint. Because Plaintiff's proposed amended claims against Heratige are time-barred, his motion to amend should be denied.

B.     Sovereign Immunity

Plaintiff's claims alleging constitutional violations against the BOP and Health Care Services are barred by sovereign immunity. Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001); FDIC v. Meyer, 510 U.S. 471, 486 (1994) (finding there is no direct cause of action for damages against a federal agency because of sovereign immunity). Accordingly, Plaintiff's claims against these defendants should be dismissed without prejudice for want of jurisdiction.

To the extent Plaintiff may be attempting to bring a claim pursuant to the Federal Tort Claims Act ("FTCA") for medical negligence, those claims are also barred by sovereign immunity. The FTCA is a limited waiver of the United States's sovereign immunity allowing "civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008). Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a).

9

This "requirement is a prerequisite to suit under the FTCA." Life Partners Inc. v. United States, 650 F.3d 1026, 1030 (5th Cir. 2011). "Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Tort Claims Act, and absent compliance with the statute's requirement [a] district court [is] without jurisdiction." McAfee v. 5th Circuit Judges, 884 F.2d 221, 223-23 (5th Cir. 1989).

As explained by the Government, Plaintiff has not filed an administrative claim regarding his medical care at FCI Bastrop. Rather, Plaintiff filed a claim while he was confined in FMC Lexington on April 9, 2015, alleging permanent damage to his left foot due to improper shoes issued at FMC Lexington and improper medical care received at that specific facility. The claim was denied on June 8, 2015. The letter informed Plaintiff he had six months from the date of denial to file a suit in federal court. Plaintiff did not place his complaint in the mail until June 6, 2016, nearly a year after his claim was denied. Because Plaintiff failed to exhaust his administrative claim with respect to his medical care at FCI Bastrop, his claims are barred. Accordingly, the Motion to Dismiss filed by Defendants BOP and Health Care Services should be granted.

    C.    Statutory Immunity

Defendants Persimmon and Montgomery have statutory immunity pursuant to 42 U.S.C. § 233(a). Plaintiff's Bivens claims against these defendants are preempted by 42 U.S.C. § 233(a), which provides that a plaintiff's sole remedy is a claim brought under the Federal Torts Claim Act. See Carlson v. Green, 446 U.S. 14, 20 (1980) (noting § 233(a) as an example of Congress explicitly stating that the FTCA is a plaintiff's exclusive remedy); Montoya-Ortiz v. Brown, 154 Fed. Appx. 437, 439 (5th Cir. 2005) (unpublished). Therefore, Plaintiff cannot maintain a Bivens action against Persimmon and Montgomery, and he has no separate cause of action under 42 U.S.C. § 233.

D.  Summary Judgment Standard

The Court will analyze Plaintiff's remaining claims under the summary judgment standard. A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.[1]

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

---

[1] Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

11

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

    E.    Qualified Immunity

Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell assert their entitlement to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend Cnty., 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). To negate a defense of qualified

12

immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court later reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223 (2009).

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with a "deliberate indifference" to the serious medical needs of prisoners. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Estelle v. Gamble, 429 U.S. 97, 105 (1976). The Farmer Court defined the test for "deliberate indifference" as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. See also Wilson v. Seiter, 501 U.S. 294, 299-303 (1991); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). This standard "is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). A prisoner's disagreement with his medical treatment does not raise a viable deliberate indifference claim, absent exceptional circumstances. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). Negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute an 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"

Estelle, 429 U.S. at 105-106. Delay in medical care is actionable as an Eighth Amendment violation, however, only to the extent that the delay constitutes deliberate indifference and results in substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993); see also Gobert, 463 F.3d at 346 (noting neither unsuccessful treatment nor negligence amount to deliberate indifference).

Viewing the summary judgment evidence in the light most favorable to Plaintiff, the plaintiff has failed to establish a constitutional violation. Plaintiff was in inmate at the satellite camp at FCI Bastrop from October 9, 2013, until April 17, 2014, when he was transferred to the Federal Medical Center in Lexington, Kentucky. ("FMC Lexington").

Plaintiff's medical records indicate he went to sick call on October 28, 2013, and was seen by a nurse for the ulcer on his foot. On October 30, 2013, Plaintiff was seen by a mid-level practitioner. At that time, Plaintiff had a 2 cm x 2 cm ulceration on two areas of the left foot. The ulcers were deep and communicated with each other. Plaintiff was seen by the provider, evaluated, placed on antibiotics, and placed on dressing changes. Labs were ordered. Plaintiff was seen again by the provider on November 7, 2013, and improvement was found in both ulcers. A consultation request was placed to a podiatry specialist. The request was approved on November 12, 2013, but Plaintiff was not sent to the podiatrist until March 24, 2014. Defendants do not account for the delay. Defendant McCrary-Dixon indicated in Plaintiff's medical notes on December 13, 2013, that Plaintiff had a podiatry consult pending and would email the scheduler. On February 19, 2014, Plaintiff's medical notes indicate Defendant Montgomery would generate a podiatry consult. It appears but is not clear that the approval for a podiatry specialist in November was disregarded until Defendant Montgomery generated a podiatry consult in February.

During the delay in seeing a podiatrist, between November 2013 and March 2014, Plaintiff was seen regularly by FCI Bastrop medical providers, specifically on November 15, November 22, December 13, December 18, January 24, February 19, and March 18. On March 24, 2014, Plaintiff was seen by Dr. Gee, a contract podiatrist. Dr. Gee found exposed bone, removed the bone fragments, cleaned and debrided the area, and cultured the ulcer. When Plaintiff was returned to FCI Bastrop, his foot was x-rayed and bone was found to be missing from his small left toe. He was sent to the emergency room for further work-up for osteomyelitis, and he was returned to FCI Bastrop. After March 24, 2014, Plaintiff continued to receive care from FCI Bastrop medical providers until his transfer to FMC Lexington the next month.

Authenticated "records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Here, Plaintiff's medical records indicate that he "was afforded extensive medical care by prison officials" and his medical records, coupled with his allegations, fail to show that medical staff demonstrated deliberate indifference to his medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff's claims are based on disagreement with the course of his treatment. Plaintiff has not alleged that anyone at FCI Bastrop engaged in the "egregious intentional conduct required to satisfy the exacting deliberate indifference standard." Gobert, 463 F.3d at 351–52 (describing the inmate's extensive record of medical treatment and noting the lack of evidence to establish culpable intent). Accordingly, Plaintiff has failed to establish a constitutional violation.

F. <u>Dr. Gee</u>

Plaintiff cannot maintain a <u>Bivens</u> claim against Dr. Gee. In <u>Minneci v. Pollard</u>, 565 U.S. 118, 131 (2012), the Supreme Court addressed the application of <u>Bivens</u> to claims similar to Plaintiff's and concluded:

> [W]here ... a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a <u>Bivens</u> remedy in such a case.

As in <u>Minneci</u>, Plaintiff cannot maintain a <u>Bivens</u> claim against Dr. Gee.

Moreover, even if Plaintiff could have maintained a <u>Bivens</u> claim against Dr. Gee, Plaintiff's claims against him do not amount to a constitutional violation. Plaintiff's medical records reveal Dr. Gee treated Plaintiff on March 24, 2014. On exam, Dr. Gee noted a wound approximately 1.2 x 1.3 cm in size, located at the plantar lateral left foot. The wound appeared to be through the skin, subcutaneous tissue, fascial layers, tendon, and bone. Dr. Gee diagnosed a Wagner Grade III ulcer of the left foot with bone exposed. He cleansed the wound with iodine solution and debrided the ulcer. During debridement, a large bone fragment of the left fifth metatarsal head was exposed and removed from the plantar aspect of the left foot. The bone fragment, which was photographed, was noted to be very soft and mushy. Dr. Gee cultured the wound and started Plaintiff on Silvadene cream once daily. According to Dr. Gee, he asked Plaintiff if he wanted to keep the bone, to which Plaintiff responded he did not. The bone was then discarded as biohazardous waste.

Thereafter, Dr. Gee released Plaintiff to the care of FCI Bastrop. Once released, he had no authority to order x-rays or schedule a follow-up appointment for Plaintiff. When Dr. Gee received

16

the results of the culture and sensitivity report, he faxed the results to FCI Bastrop on March 27, 2014. The culture and sensitivity report showed heavy Escherichia coli and moderate Methicillin-resistant Staph Aureus.

Plaintiff has not shown Dr. Gee violated his constitutional rights. As mentioned above, a prisoner's disagreement with his medical treatment does not raise a viable deliberate indifference claim, absent exceptional circumstances. Domino, 239 F.3d at 756.

G. Supplemental Jurisdiction

Plaintiff also asserts state law claims of negligence against the defendants. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action over which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because the dismissal of Plaintiff's federal claims is recommended, the District Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[2]

RECOMMENDATION

It is therefore recommended that Plaintiff's Motion to Amend Complaint [#58] be **DENIED**. It is further recommended that the Motion to Dismiss for Lack of Subject Matter Jurisdiction [#32], filed by the Bureau of Prisons and Health Care Services, be **GRANTED** and Plaintiff's claims against the Bureau of Prisons and Health Care Services be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction. It is further recommended that the original Motion to Dismiss or in the

---

[2] The Court notes the Government defendants did not move for summary judgment on Plaintiff's state law claims asserted against them in their individual capacities.

Alternative Motion for Summary Judgment filed by Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell (Document 52) be **DISMISSED WITHOUT PREJUDICE**, as the motion was superseded by an amended motion. It is further recommended that the Amended Motion to Dismiss (Document 55) be **GRANTED** to the extent Defendants Persimmon and Montgomery are protected by statutory immunity and the Amended Alternative Motion for Summary Judgment filed by Defendants Persimmon, Harvey, Outwin, Montgomery, and Russell (Document 55) be **GRANTED** with respect to Plaintiff's federal constitutional claims. It is further recommended that Defendant Gee's Motion for Summary Judgment (Document 56) be **GRANTED** with respect to Plaintiff's federal constitutional claims and his Alternative Motion to Dismiss (Document 56) be **DISMISSED**. It is further recommended that Defendants March and McCrary-Dixon be **DISMISSED WITHOUT PREJUDICE** for lack of service and want of prosecution. It is finally recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest

injustice.  Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc); Thomas v. Arn, 474 U.S. 140, 148 (1985); Rodriguez v. Bowen, 857 F.2d 275, 276-277 (5th Cir. 1988).

SIGNED this 16th day of August, 2017.

*[signature]*

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE